UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SULPHUR MANOR, INC. d/b/a** <br> **CALLAWAY NURSING HOME** <br><br> **Plaintiff,** <br><br> v. <br><br> **SYLVIA M. BURWELL, et. al.** <br><br> **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. CIV-15-250-RAW <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT BURWELL'S MOTION TO DISMISS**
**AND BRIEF IN SUPPORT**

COMES NOW, the Defendant, Sylvia M. Burwell, Secretary of the United States Department of Health and Human Services (Secretary or HHS) by and through Mark F. Green, United States Attorney for the Eastern District of Oklahoma, and hereby moves the Court to dismiss Sulphur Manor, Inc. d/b/a Callaway Nursing Home's (Callaway or Plaintiff) Complaint, due to lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). [1]

## I. Introduction

In this case, Callaway seeks a court order enjoining the Medicare program's mandatory termination of Callaway's provider agreement after six months of continued non-compliance with federal health and safety regulations. 42 U.S.C. 1395i-3 (h)(2)(C); 42 C.F.R. § 488.412(b). The Secretary's power to terminate a Medicare agreement with a provider participating in the program is set out at 42 U.S.C. § 1395cc(b)(2). The Medicare Act allows for providers, such as the plaintiffs in this case, to receive administrative and judicial review of the Secretary's

---

[1] In the interests of expeditiously resolving this matter, Defendant files this motion to dismiss prior to being properly served with Plaintiff's complaint. Defendant does not waive its right to be served pursuant to Fed. R. Civ. Pro. 4.

1

decision to terminate "to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title." 42 U.S.C. § 1395cc(b)(2)

This action is improper because provisions in the Medicare Act, as codified at 42 U.S.C. § 405(h), requires the channeling of all claims "arising under" the Medicare Act through an administrative appeal process before granting subject matter jurisdiction for judicial review. See, *Illinois Council v. Shalala*, 529 U.S. 1, (2000)(observing that the Medicare statute "demands the 'channeling' of virtually all legal attacks through the agency").[2]

On July 2, 2015, Callaway filed an administrative appeal of the termination, but has failed to exhaust the administrative remedies available to it under the Medicare statute; therefore the Court should dismiss Callaway's attempt to make and end-run around the administrative review process established by Congress.

## II. Statement of Facts

A.  **State and Federal Oversight of Nursing Homes**

Primary responsibility for administration of the Medicare program, conducted pursuant to the Medicare Act, 42 U.S.C. § 1395, *et seq.,* lies with the Centers for Medicare & Medicaid Services ("CMS"). CMS is a component of the United States Department of Health and Human

---

[2] The Tenth Circuit, and district courts within the Circuit, have adhered to the Medicare Statute's jurisdictional bar in 42 U.S.C. § 405(h) and the long line of Supreme Court cases interpreting the provision. *See*, *Precedent Health Center Operations v. Mutual of Omaha*, 392 Fed. Appx. 618, 623, 2010 WL 3033625 (10th Cir. Aug. 4, 2010)(Unpublished)(the district court lacked subject matter jurisdiction because Medicare provider failed to exhaust administrative remedies.); *Home Care Assoc. of America v. United States*, 229 F.3d 1163, 2000 WL 1289154 (10th Cir. 2000)(Unpublished)("plaintiffs' failure to first exhaust the administrative remedies provided by the Medicare statute deprived the district court of subject matter jurisdiction."); *THI of Kansas at Highland Park, LLC v. Sebelius*, 2013 WL 4047570 (D. Kan. August 9, 2013)(dismissing for lack of subject matter jurisdiction nursing home operator's motion to enjoin Medicare termination pending administrative appeal); *Peak Medical v. Sebelius*, No. 10-cv-597, 2010 WL 4637511 (N.D. Okla. Nov 5, 2010)(finding that it lacked subject matter jurisdiction because Medicare nursing home provider failed to exhaust administrative remedies).

Services ("HHS"). Part A of the Medicare Act, at issue here, provides coverage for hospital and post-hospital services, including services at skilled nursing facilities. In order to participate in Part A--i.e., to be eligible to receive Medicare payments made on behalf of Medicare beneficiaries--a long term care facility must comply with standards imposed by the Medicare Act and applicable regulations, as enforced by CMS.

In order to participate in the Medicare and Medicaid programs, and thus receive payments from those programs, a nursing home must comply with minimum health and safety standards. 42 U.S.C. § 1395i-3(a)-(d) (Medicare); 42 U.S.C. § 1396r(a)-(d) (Medicaid). The statute provides: "It is the duty and responsibility of the Secretary to assure that requirements which govern the provision of care in skilled nursing facilities…and the enforcement of such requirements, are adequate to protect the health, safety, welfare, and rights of residents and to promote the effective and efficient use of public moneys." 42 U.S.C. § 1395i-3(f)(1).

The Medicare Act requires that the Secretary stop Medicare payments to any skilled nursing facility that does not return to substantial compliance with participation requirements within six months of being found not to be in substantial compliance and the implementing regulation requires a termination of the provider agreement. 42 U.S.C. § 1395i-3 (h)(2)(C); 42 C.F.R. § 488.412(b). Compliance is monitored by inspections, or "surveys," generally conducted on behalf of CMS by state agency personnel--in this case, those of the Oklahoma State Department of Health (OSDH).

Nursing homes subject to remedies, including termination of Medicare and Medicaid payments, are entitled to administrative review pursuant to 42 C.F.R. § 498.3(a) and (b)(8) and (13).

Termination of Medicare and Medicaid payments to a nursing home operator does not

require discharge of residents during the administrative review. Rather, termination of government payments means simply that a nursing home operator does not receive continued payments unless and until the nursing home operator prevails in its administrative appeal.

Regardless of a nursing home's financial condition, the immediate financial impact of termination is mitigated by 42 C.F.R. § 489.55, which provides that Medicare payments for care of residents in a facility at the time of termination continue for up to 30 days following termination. Finally, a nursing home operator whose Medicare and Medicaid participation is terminated may be reinstated, if the nursing home demonstrates that it has corrected health and safety violations and provides CMS with "reasonable assurance" of future compliance. 42 C.F.R. § 489.57.

**B.     Callaway's Continued Non-Compliance Since January 8, 2015, led to this Mandatory Termination**

As stated generally in the Complaint, and its attachment, adverse survey results led to CMS's determination to terminate Callaway from participation in the Medicare program on July 8, 2015, for failure to comply with the participation requirements for Medicare and Medicaid.

There have been two complaint surveys and three revisit surveys conducted since January 2015. On January 8, 2015, the current enforcement action began with a complaint survey which cited six deficiencies. OSDH cited actual harm and substandard quality of care for the facility's failure to inform the physician and family that a resident had fallen and sustained a fractured femur. Callaway did not appeal these findings.

The February 25, 2015, complaint survey cited additional deficiencies for failure to prepare meals at the proper temperature and failure to ensure dietary staff had adequate covering for hair and facial hair. Callaway did not appeal these findings.

4

The March 20, 2015, and May 5, 2015, revisits cited a total of nine deficiencies and recited the facility's failure to a) properly assess, monitor and obtain treatment orders for multiple stasis ulcers and to inform the physician and family of a change in the resident's condition; and b) ensure the condition of a wound was assessed and monitored for a resident. Callaway did not appeal these findings.

A third revisit was conducted on June 11, 2015, and the facility was cited for failure to have a licensed administrator and failure to prepare food at the proper consistency which resulted in a resident with a history of choking receiving inappropriately prepared food that the resident could not swallow. The resident choked on food two days and required emergency care. Callaway appealed these finding with the Department of Health and Human Services, Departmental Appeals Board on July 2, 2015.

### III. Arguments and Authorities

**A.   The Case Should Be Dismissed Pursuant to Fed.R.Civ.P. 12(b)(1)**

Federal courts are courts of limited jurisdiction that may exercise only those powers authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *Sunshine Haven Nursing Operations, LLC v. U.S. Dept. of Health and Human Services*, 742 F.3d 1239 (10th Cir. 2014). Further, "[b]ecause the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.... A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013),

quoting, *Marcus v. Kansas Dep't of Revenue,* 170 F.3d 1305, 1309 (10th Cir.1999) (citation omitted).

B.   **The Court Lacks Subject Matter Jurisdiction**

1.   **CMS is entitled to sovereign immunity**

In a suit where the United States or one of its agencies is a defendant, a waiver of sovereign immunity is a prerequisite to subject matter jurisdiction. *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006). The party invoking federal jurisdiction has the burden of proving jurisdiction exists. *See Kokkonen,* 511 at 377; *Ely v. Hill*, 35 Fed. Appx. 761, 763 (10th Cir. 2002). Where the party asserting claims against the United States has failed to identify an applicable waiver of sovereign immunity, the claims must be dismissed. See *Fostvedt v. United States*, 978 F.2d 1201, 1204 (10th Cir. 1992). Callaway has not identified an applicable statutory waiver of sovereign immunity coupled with an underlying jurisdictional basis, therefore, the court lack subject matter jurisdiction.

2.   **Callaway's Failure to Exhaust the Administrative Remedies Provided by the Medicare Act Deprives the District Court of Subject Matter Jurisdiction**

A.   **Callaway's Claims Arise under the Medicare Act**

Callaway asserts that, "this action arises under the Social Security Act, 42 U.S.C. §§ 301, et seq., implicating both the Medicare Act, 42 U.S.C. §§ 1395 et seq., and the Medicaid Act, 42 U.S.C. §§ 1396, et seq." Compl. at ¶ 8. As such, judicial review pursuant to other jurisdictional provisions is precluded by 42 U.S.C. § 405(h), which is made applicable to Medicare by 42 U.S.C. § 1395ii. Section 405 provides in relevant part:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such a hearing. No findings of fact or decision

> of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). It is well-settled that Section 405(h) renders the provisions of Section 405(g) the sole avenue for judicial review of all claims "arising under" the Medicare Act. *Shalala v. Ill. Council on Long Term Care, Inc.,* 529 U.S. 1, 20 (2000); *Heckler v. Ringer,* 466 U.S. 602, 605 (1984); *Weinberger v. Salfi,* 422 U.S. 749, 760-61 (1975) (holding that the third sentence of § 405(h) provides that § 405(g) -- to the exclusion of 28 U.S.C. § 1331 -- is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act."); *Hadley Memorial Hosp., Inc. v. Schweiker,* 689 F.2d 905, 909 (10th Cir. 1982)(concluding that § 405(h) limits judicial review of actions arising under the Medicare Act to procedures available under [the Act's'] provisions)

The Supreme Court has applied two tests to determine whether claims arise under Medicare. First, claims that are "inextricably intertwined" with a Medicare benefits determination may arise under Medicare. *Ringer*, 466 U.S. at 614. Second, "claims in which 'both the standing and the substantive basis for the presentation' of the claims" is the Medicare Act, may arise under Medicare. *Id.* at 615.

Callaway admits that its claims arise under the Medicare Act and, as a result, it must exhaust its administrative remedies, as required by the Medicare Act.

### B. Callaway's Failure to Exhaust its Administrative Remedies Precludes the Court's Exercise of Subject Matter Jurisdiction

Callaway recognizes that § 405(g) requires a provider to fully exhaust administrative remedies before filing suit, but it urges the Court to waive the rule. Comp. at ¶ 10. Waiver is rare; the Medicare Act limits the jurisdiction of federal courts to review claims brought under the

Act by requiring that "virtually all legal attacks" be brought through the agency. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

Courts have repeatedly rejected waiver requests in cases involving the Secretary's termination of a facility's participation in the Medicare program and have affirmed the applicability of §§ 405(g) and 405(h) in that context, and thus have held that a court is without jurisdiction to enjoin or review the propriety of the termination prior to the exhaustion of administrative remedies.  All of Callaway's arguments have been rejected by one or more courts.

Several courts of appeals have specifically held that a healthcare provider's grievance over the termination of its Medicare provider agreement "arises under" the Medicare Act, depriving the courts of jurisdiction over the dispute until the provider has exhausted its administrative remedies. See *Livingston Care Ctr., Inc. v. U.S.*, 934 F.2d 719, 721 (6th Cir. 1991) (denying injunctive relief to nursing home); *Cathedral Rock of North Coll. Hill v. Shalala*, 223 F.3d 354 (6th Cir. 2000) (denying injunctive relief to nursing home being terminated from Medicare); *Affil. Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282 (5th Cir. 1999) (reversing district court's grant of injunctive relief to terminated home health agency and requiring exhaustion of administrative appeal); *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072  (7th Cir. 1982) (same); *Hopewell Nursing Home, Inc. v. Schweiker*, 66 F.2d 34, 39 (4th Cir. 1981) (holding that all complaints related to Medicare determinations, even those that may be "truly constitutional and statutory in character, and therefore incapable of resolution at the administrative level," must be channeled through the administrative appeal process before being presented to the federal courts).

Two recent district court decisions in the in the Tenth Circuit have reached similar conclusions.  See, *THI of Kansas at Highland Park, LLC v. Sebelius*, 2013 WL 4047570 (D.

Kan. August 9, 2013)(dismissing for lack of subject matter jurisdiction nursing home operator's motion to enjoin Medicare termination pending administrative appeal); *Peak Medical v. Sebelius*, No. 10-cv-597, 2010 WL 4637511 (N.D. Okla. Nov 5, 2010)(finding that it lacked subject matter jurisdiction because Medicare nursing home provider failed to exhaust administrative remedies.);

     Nationwide, other district courts have consistently dismissed similar nursing home challenges. See, *Bayou Shores v. Burwell*, 2014 WL 4059900 (M.D. Fl. Aug. 15, 2014)(Court found it lacked subject matter jurisdiction to enjoin termination because nursing home had not exhausted administrative remedies); *Blossom South v. Sebelius*, 2013 WL 6622906 (W.D. Ny. December 17, 2014); *Autumn Health Care of Zanesville, Inc. v. U.S. Dep't of Health and Human Serv.*, 2013 WL 4013969 (S.D. Ohio August 6, 2013)(denying nursing home operator's motion to restrain and enjoin Medicare termination and dismissing for lack of subject matter jurisdiction); *Athens Healthcare, Inc. v. Sebelius*, 2013 WL 2403578 (M.D. Pa. May 31, 2013)(dismissing for lack of jurisdiction a nursing home operator's demand for temporary restraining order to compel continued Medicare and Medicaid payments) and *Bristol Health Care Investors, LLC v. Emkes*, 2013 WL 2403299 (E.D. Tenn. May 31, 2013)(vacating temporary restraining order, denying preliminary injunction, and dismissing for lack of subject matter jurisdiction).

     These recent decisions are consistent with numerous earlier district court decisions acknowledging the jurisdictional bar and denying equitable relief against the Medicare program. See *Forum Healthcare Group, Inc. v. CMS*, 495 F.Supp.2d 1321 (N.D. Ga. 2007) (nursing home); *Trade Around the World of PA v. Shalala,* 145 F.Supp.2d 653 (W.D. Penn. 2001) (nursing home); *Northwest Healthcare, L.P. v. Sullivan*, 793 F.Supp. 724 (W.D. Tex. 1992)(nursing home); *Dynamic Visions v. Dep't of Health and Human Servs.*, Civil Action 10-

10864-JLT 2011 WL 1527022 (D. Mass. Apr. 20, 2011) (home health provider).  Callaway has not distinguished these cases.

### C. Plaintiff Failed to Demonstrate that Channeling Review through the Agency Would Result in "No Review At All," as required to meet the *Michigan Academy* Exception explained in *Illinois Council*

Plaintiff's reliance on *Illinois Council on Long Term Care, Inc.* is baffling. In that decision, the Supreme Court affirmed that § 405's bar on preexhaustion review by federal courts applies to "claims that contest a sanction or remedy [imposed against a deficient nursing home]…" *Id*. at 14.  Further, the Court acknowledged that § 405(g)'s provision for post-exhaustion judicial review "adequately protects" the rights of nursing home operators. Id. at 24. Even if Callaway would be financially harmed by termination of Medicare payments, such harm would not excuse exhaustion, as requested by Callaway. Compl. at ¶ 10. As previously stated, in *Illinois Council*, the Supreme Court recognized that Congress's decision to channel all claims arising under the Medicare Act through the agency "comes at a price, namely, occasional individual, delay-related hardship." *Illinois Council*, 529 U.S. 1, 13 (2000).  The Court explained that Congress deemed this price justified in the context of a massive health program like Medicare, and it refused to hold that a party "could circumvent [the Medicare Act's] channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case." *Id.* at 22.  The question instead, the Court found, is "whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review." *Id*. at 22-23 (emphasis in original).  See, *Cathedral Rock of North Coll. Hill v. Shalala*, 223 F.3d 354, 359-361 (6th Cir. 2000)(rejecting application of the *Michigan Academy* exception).

Participation in the Medicare program is voluntary; providers who choose to participate "do so with no guarantee of solvency." *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 720-21 (6th Cir. 1991). Even if a provider is forced out of business as a result of the Secretary's actions, "the injuries are not necessarily 'irreparable,' considering the risk known to the [] provider when it enters the Medicare program." *Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995)("[T]he companies' allegations of financial doom, even if they were substantiated, which they are not, would not necessarily warrant judicial waiver of the exhaustion requirement.").

    **D.**    **Callaway is not entitled to a waiver of exhaustion under *Mathews v. Eldridge*, 424 U.S. 319 (1976).**

Plaintiff further argues that as set forth in *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), "federal courts should consider the exhaustion requirement waived in cases where (1) the constitutional claim is wholly collateral to the merits of the claim and (2) the 'interest in having a particular issue resolved promptly is so great.'' Here, Plaintiff argues, that "immediate termination of the provider agreements and cessation of Medicare and Medicaid payments, without a meaningful opportunity to challenge the merits of CMS's findings and unlawful termination order…" merits waiver. Compl. at ¶70.a. Application of the *Eldridge* case to allow for pre-termination hearing has been rejected in other nursing home termination cases. See, *Cathedral Rock of North Coll. Hill v. Shalala*, 223 F.3d 354, 361-366 (6th Cir. 2000); *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 720-21 (6th Cir. 1991); *THI of Kansas at Highland Park, LLC v. Sebelius*, 2013 WL 4047570 (D. Kan. August 9, 2013).

In an earlier case, the Tenth Circuit held that nursing home providers and residents are not entitled to hearing to pre-termination hearings prior to the discontinuation of Medicare participation. *Geriatrics, Inc. v. Harris*, 640 F.2d 262 (10th Cir. 1981). The Tenth Circuit

11

relied on two other decisions that analyzed the provider's rights under the *Eldridge* factors. *Town Court Nursing Center, Inc. v. Beal,* 586 F.2d 266 (3d Cir. 1978); C*ase v. Weinberger*, 523 F.2d 602, 607 (2d Cir. 1975). The Tenth Circuit quoted the following from Town Court:

> "The opinion of the Supreme Court in Mathews v. Eldridge, supra, makes it apparent that due process does not require that Town Court be given an evidentiary hearing and judicial review prior to the effective date of the Secretary's initial decision to terminate provider status under Medicare."

*Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir. 1981). If further noted that,

> In *Case v. Weinberger,* 523 F.2d 602 (2d Cir.), the court decided that a pre-termination hearing for a provider was not required and gave particular emphasis to the fact that the nursing home is not the intended beneficiary of the Medicare program. It indicated that the fact that the particular home might not survive without Medicare patients was not a primary consideration and "the facility's need is incidental." Also the Second Circuit stated that the benefits to the home arose from an ordinary contractual business arrangement with the government.

*Id*. The Secretary's position against providing Callaway with a pre-termination hearing is even stronger here than in the *Geriatrics* case, in which the provider's participation was merely not renewed.  <u>Callaway was out of compliance with health and safety standards for six months</u> and the regulations require that the Secretary termination of its participation in the Medicare program.

**3.**     **Callaway Cannot Establish Subject Matter Jurisdiction under the 28 U.S.C § 1331**

Callaway asserts jurisdiction premised on 28 U.S.C. § 1331. Compl. at ¶9. However, the third sentence of 42 U.S.C. § 405 (h), expressly states that, "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."  In lieu of § 1331, Congress created a special jurisdictional foothold for these claims, as follows: "Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days." 42 U.S.C. § 405(g). The

Supreme Court has recognized that, "the third sentence of § 405(h), made applicable to Medicare Act by § 1395ii, provides that § 405(g), to exclusion of 28 U.S.C. § 1331, is sole avenue for judicial review for all claims arising under Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984)(involving claims for a medical procedure). The Tenth Circuit has also found that 42 U.S.C. 405(h) bars federal question jurisdiction. *Hadley Memorial Hosp., Inc. v. Schweiker*, 689 F.2d 905, 909 (10th Cir. 1982)

4. **Callaway Cannot Establish Subject Matter Jurisdiction under the Administrative Procedure Act**

Callaway contends that the Administrative Procedure Act (APA) grants the Court authority to enjoin the Secretary, but the APA does not confer independent jurisdiction to the courts. See, e.g., *Hamilton v. Gonzales,* 485 F.3d 564, 568 -569 (10th Cir. 2007); *Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir.1992) (the APA "does not create an independent grant of jurisdiction for the review of agency actions").  Rather, the Supreme Court has held that a party seeking APA review in federal court must identify a jurisdictional grant from either the enabling statute or one of the general jurisdiction provisions under Title 28 of the United States Code.  *Califano v. Sanders*, 430 U.S. 99 (1977).  In *Califano v. Sanders*, 430 U.S. 99 (1977), the Supreme Court held that the Administrative Procedure Act did not itself constitute an implied grant of subject-matter jurisdiction permitting federal judicial review of the actions of the Secretary under the Social Security Act. Id. at 107.

5. **Callaway Cannot Establish Subject Matter Jurisdiction under the All Writs Act**

Similarly, Callaway contends that the Court may issue injunctive relief against the Secretary under the All Writs Act (28 U.S.C. §1651(a)).  It is well-settled, however, that "the Act itself is not a grant of jurisdiction." *In re Tennant*, 359 F.3d 523, 527 (D.C.Cir.2004). The All

Writs Act provides that the federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). This statutory language makes clear that the authority to issue writs is confined to the issuance of process "in aid of" jurisdiction that is created by some other source and not otherwise enlarged by the Act. *In re Tennant*, 359 F.3d at 527.

**6.      Callaway Cannot Obtain Declaratory or Injunctive Relief Unless the Court has Subject Matter Jurisdiction**

The Supreme Court has made it clear that a court's threshold determination of its jurisdiction is a prerequisite to any judicial action: "[without] jurisdiction the court cannot proceed at all in any cause," and, thus, "when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quotation omitted). A court must have subject matter jurisdiction over a matter before it may exercise its equitable powers to grant injunctive relief. *See Clarinda*, 100 F.3d 526, 531 (8th Cir. 1996) ("we have no subject matter jurisdiction over this appeal and the district court had no jurisdiction to consider Clarinda's motion for an injunction.").

Callaway seeks a declaratory judgment, but the Courts lacks independent jurisdiction to grant such relief. It has long been understood that the federal Declaratory Judgment Act, now codified at 28 U.S.C. § 2201 (1994), is a procedural statute, and does create a new basis for subject matter jurisdiction. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 15–16 (1983); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72 (1950). In this case, the Court cannot issue a declaratory judgment or injunctive relief because subject matter jurisdiction is presently barred by 42 U.S.C. § 405 (h).

## IV. Conclusion

As noted in *Illinois Council,* the restrictions of §§ 405(g) and 405(h) are the result of a balancing by Congress. They serve the overall goals and efficiency of the Medicare program by assuring that it can operate without premature judicial intervention. See *Illinois Council,* 106 S. Ct. at 1093. *Illinois Council* acknowledges that this assurance "comes at a price," which is occasional hardship. *Id.*

Plaintiff will be entitled to judicial review following its exhaustion of administrative remedies, should it be dissatisfied with the results. Because judicial review will be available, the *Michigan Academy* exception to the exhaustion requirement is not met. The case should be dismissed without prejudice.

Respectfully Submitted,

s/ Mark F. Green
MARK F. GREEN, OBA # 3570
United States Attorney
520 Denison Avenue
Muskogee, OK 74401
Phone: (918) 684-5151 Fax: (918) 684-5130
E-mail: Mark.Green@usdoj.gov

## CERTIFICATE OF MAILING

I hereby certify that on July 7, 2015, I electronically filed the foregoing with the Clerk of Court using the ECF System. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant: Daniel Aizenman, Attorney for Plaintiff, email: daizenman@gabmh.com and Defendant, Oklahoma Healthcare Authority, email: tracy.lott@okhca.org.

s/ Mark F. Green
MARK F. GREEN
United States Attorney