# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SULPHUR MANOR, INC. d/b/a ) | |
| CALLAWAY NURSING HOME, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-15-250-RAW |
| ) | |
| SYLVIA BURWELL, in her official capacity ) | |
| as Secretary of Health and Human Services, ) | |
| United States Department of Health and ) | |
| Human Services; and ) | |
| NICO GOMEZ, in his official capacity ) | |
| as Chief Executive Officer, Oklahoma ) | |
| Health Care Authority, ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Before the court is the motion of the defendant Sylvia Burwell to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) F.R.Cv.P. On July 8, 2015, the court granted a temporary restraining order. The verified complaint reflects the following allegations by plaintiff: Plaintiff is a nursing facility in Sulphur, Oklahoma that provides care to 72 residents. Approximately 52 of the residents are beneficiaries of the Medicaid program[1] and 3 of the residents are beneficiaries of the Medicare program.[2] The Federal Centers for Medicare and Medicaid Services ("CMS") recently notified plaintiff that its

---

[1]The Medicaid Act is a joint program funded by both the federal and state governments designed to provide medical assistance to certain persons in need. *Peak Medical Oklahoma No. 5, Inc. v. Sebelius,* 2010 WL 4637511, *1 (N.D.Okla.2010)(hereafter *Peak Medical*).

[2]The Medicare Act is a federal program designed to provide health insurance for aged and disabled persons. *Id.*

Medicare and Medicaid provider agreements will be involuntarily terminated due to plaintiff being cited for two deficiencies during a June 11, 2015 inspection survey.[3] As a result of this termination, plaintiff will stop receiving Medicare and Medicaid payments on July 8, 2015. This will result in plaintiff going out of business and its residents will be forced to relocate. Three residents presently receive Hospice benefits for end-of-life care.

A party invoking federal jurisdiction has the burden of proof on that issue because federal courts are courts of limited jurisdiction. *Penteco Corp. Ltd. P'ship-1985A v. Union Gas Sys., Inc.,* 929 F.2d 1519, 1521 (10th Cir.1991). A 12(b)(1) motion takes two forms: either a "facial" or a "factual" attack. *Pueblo of Jemez v. United States,* 2015 WL 3916572, *27 n.4 (10th Cir.2015). In reviewing a factual attack, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. The court has wide discretion to allow affidavits, other documents and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.* The district court in *Peak Medical* held that such a motion in the present context is a factual attack, because failure to exhaust administrative remedies is a fact upon which subject matter jurisdiction depends. *Peak Medical,* at *4.[4]

---

[3]Plaintiff's response (#18) to the motion states that the date of notification was June 22, 2015. It further states that on July 10, 2015, CMS provided plaintiff notice that it was increasing the severity and scope of the alleged deficiencies. In her motion, defendant Burwell also asserts previous deficiencies on plaintiff's part, which findings were not appealed. (#10 at 4-5).

[4]In the case at bar, plaintiff concedes that it has not exhausted administrative remedies, but argues that it is not <u>required</u> to do so. In this sense, there are no disputed jurisdictional facts, but rather a legal issue to be resolved. Accordingly, the court will not hold a hearing. Nevertheless, the court is considering material outside the pleadings and will treat the motion as a factual attack. Such consideration does not convert the motion to a Rule 56 motion. *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995).

Where the Secretary determines that a facility's deficiencies pose "immediate jeopardy" to residents' health and safety, applicable law authorizes the Secretary to either appoint temporary management over the facility or terminate the facility's Medicare and Medicaid agreement.[5] *THI of Kansas at Highland Park, LLC v. Sebelius,* 2013 WL 4047570, *2 (D.Kan.2013)(hereafter *THI).* Where a nursing facility's participation in Medicare and Medicaid will be terminated, federal law entitles the facility to an appeal process, involving an ALJ, an Appeals Board and judicial review of the Board's decision. *Id.*

Plaintiff filed an administrative appeal on July 2, 2015. The record does not reflect that a hearing date has yet been provided. The general principle is as follows: "The Court is not authorized to address claims arising under the Medicare and Medicaid Acts until after the conclusion of an administrative review process." *Peak Medical,* at *5.[6] Plaintiff has explicitly alleged that its claims arise under the Medicare and Medicaid Acts. (#3 at 4, ¶8). Plaintiff, however, makes several arguments as to why the general principle should not apply. First, it contends that 5 U.S.C. §705 (as opposed to 42 U.S.C. §405) controls and gives this court jurisdiction under the Administrative Procedure Act ("APA"). Other courts have rejected this argument. *See Bayou Shores SNF, LLC v. Burwell,* 2014 WL 4059900, *9-10

---

[5]In the July 10, 2015 notice (attached to plaintiff's response) CMS invoked "immediate jeopardy." The court notes, however, there is authority that a facility's provider agreement may be terminated even absent a finding of immediate jeopardy. *See Blossom South, LLC v. Sebelius,* 987 F.Supp.2d 289, 299-300 (W.D.N.Y.2013)(citing cases).

[6]A provision of the Social Security Act, 42 U.S.C. §405(h), has been incorporated into the Medicare Act through 42 U.S.C. §1395ii and has been held to preclude federal question jurisdiction unless the Medicare program's administrative review process has been exhausted. *See Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 5 (2000).

3

(M.D.Fla.2014); *Peak Medical* at *8. *See also Native Angels Home Health, Inc. v. Burwell,* 2015 WL 3657417, *2 (E.D.N.C.2015)(As a general rule, neither constitutional claims nor claims made under the APA are cognizable without first being submitted to the Secretary); *Eagle-Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1531 (10th Cir.1990)(The APA does not create an independent basis of subject-matter jurisdiction). This court does so as well.

Thus, 42 U.S.C. §405(h) controls. That section "demands the 'channeling' of virtually all legal attacks through the agency." *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 13 (2000). Presentment of a claim to the agency is a jurisdictional prerequisite to bringing a claim under the Act in federal court. *Reed v. Heckler,* 756 F.2d 779, 783 (10th Cir.1985). Plaintiff has met this requirement by filing its administrative appeal. By contrast, exhaustion is a waivable, non-jurisdictional requirement. *Id.* Plaintiff contends that the exhaustion requirement should be waived under the reasoning of *Mathews v. Eldridge,* 424 U.S. 319 (1976). In that case, the Supreme Court held that exhaustion should be waived when (1) the court finds that plaintiff's claims are "entirely collateral" to his claim before the ALJ and (2) the court finds that plaintiff raises at least a colorable constitutional claim and that requiring it to wait for a post-deprivation hearing would cause it damage that could not be repaired through a favorable determination by the Secretary. *See THI* at *7.

Plaintiff has asserted a due process claim in Count I of the complaint. The court in *THI* held that to be "entirely collateral" the due process claim must be the only one presented. *Id.* at *8 ("But for purposes of determining this issue of jurisdiction, the Court will assume

4

that Plaintiff's oral statements at the hearing, withdrawing all claims but the claim for injunctive relief, validly amended the pleading so that only a constitutional claim for violation of its procedural due process rights remains"). Plaintiff in the case at bar has presented claims in addition to the due process claims, and these claims do assert entitlement to benefits and therefore are not "entirely collateral". Even adopting the reasoning in *THI*, however, the court will not require any sort of amendment to the complaint, because the court finds the due process claim is foreclosed by Tenth Circuit precedent.

In *Geriatrics, Inc. v. Harris,* 640 F.2d 262 (10th Cir.1981), the court held that Medicaid providers do not have a property right to continued enrollment as a qualified provider. The court reversed a preliminary injunction granted by the district court on that basis. Plaintiff argues that the holding in *Geriatrics* did not survive the enactment of §6501 of the Affordable Care Act, codified at 42 U.S.C. §1396a(a)(39). This section simply provides that any individual or entity excluded under Medicare or a state Medicaid program is also terminated automatically from Medicare and all state Medicaid programs.[7] Accordingly, plaintiff's argument is rejected because (1) this court is bound to follow Tenth Circuit precedent and (2) this court agrees with the court in *Bristol Health Care Investors,*

---

[7]In a supplemental exhibit (#23-1), plaintiff points to a page in the Federal Register which discusses Section 6501. One paragraph states: "In addition, State Medicaid programs would terminate a provider only after the provider had exhausted all available appeal rights in the Medicare program or in the State that originally terminated the provider or the timeline for such appeal has expired." This court finds (1) this language does not appear in the statutory text and (2) 42 U.S.C. §1396r(h)(3)(B) appears to give the Secretary the power to take immediate and unilateral action, such as termination of the facility's participation under the state Medicaid plan, upon a finding of "immediate jeopardy." Such a finding was made in the July 10, 2015 notification (#18-1). The language in the Federal Register, assuming *arguendo* it is effective, would only bind state officials, not federal officials.

5

*LLC v. Emkes,* 2013 WL 2403299 (E.D.Tenn.2013) that "[Section] 6501 has not[h]ing to do with nursing home non-compliance with Medicare and Medicaid conditions of participation" and does not require that such participation may only be terminated after exhaustion of appeals. *Id.* at *10. *See also THI* at *9 ("The Court finds that Plaintiff does not assert a colorable constitutional claim that it is entitled to a pre-termination hearing in this matter").

Plaintiff cites *Reed v. Heckler*, 756 F.2d 779, 782-84 (10th Cir.1985) for the proposition that exhaustion may be waived where there is a colorable constitutional claim and a showing of irreparable injury. The court does find a showing of irreparable injury in the assertion that plaintiff will go out of business upon termination of the provider agreements (#3 at 2 ¶3), but for the reasons stated does not find a colorable constitutional claim. Plaintiff also cites *Reed* for its holding that collateral <u>statutory</u> as well as constitutional claims may be a proper basis for waiver of the exhaustion requirement. *Id.* at 784-85. The statutory claim to which plaintiff refers, however, is its interpretation of §6501 of the Affordable Care Act. For the reasons stated in the preceding paragraph, the court does not find that to be a colorable claim.[8]

The court also addresses an exception recognized by the Supreme Court. In *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1 (2000), the Court interpreted *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667 (1986), as holding that §1331 federal question jurisdiction would exist if without it "application of §405(h) would not

---

[8]"To determine whether a claim is 'colorable,' we ask whether it is 'immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous.'" *Ocampo-Guaderrama v. Holder,* 501 Fed.Appx.795, 798 (10th Cir.2012)(citation omitted).

simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 19. If this court were writing on a blank slate, equating financial collapse before the completion of appeal with "no review" would not seem illogical. Recently, however, two district courts faced with this situation have found the exception inapplicable. In *First Houston Health Care, L.L.C. v. Burwell,* 2014 WL 7192315 (S.D.Tex.2014), the court noted "First Houston argues that as a practical matter it will receive no review at all because its business will no longer be viable if its Medicare billing privileges are revoked and its provider agreement is terminated." *Id.* at *6. The court, citing authority, held that financial hardship to a plaintiff in exhausting administrative remedies is a "delay-related hardship" but does not mean plaintiff is entitled to "no review at all." *Id.* To the same effect is *THI,* where that court noted: "Plaintiff argues that as a practical matter it is entitled to no review at all since its business will no longer be viable once the provider agreements terminate," but did not accept the argument. *THI* at *6.

Under existing authority, the court lacks jurisdiction to proceed, which is the issue presented.[9]

---

[9]On July 15, 2015, defendant Joel Nico Gomez (named as Nico Gomez in the complaint), filed his own motion to dismiss (#19). Gomez is the Chief Executive Officer of the Oklahoma Health Care Authority. Because the court finds that it lacks subject matter jurisdiction for the reasons advanced by defendant Burwell, the court will dismiss defendant Gomez as well, although plaintiff had not yet responded.

It is the order of the court that the motion to dismiss (#10) is hereby GRANTED. This action is dismissed without prejudice for lack of subject matter jurisdiction.

**ORDERED THIS 20th DAY OF JULY, 2015.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma